# UNITED STATES DISTRICT COURT
for the

Federal District of Massachusetts

| | |
|---|---|
| Dirk S. Adams <br> *Plaintiff(s)* <br> *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* <br> -v- <br> Miki L. Gissell <br> *Defendant(s)* <br> *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Case No. _____ <br> *(to be filled in by the Clerk's Office)* <br><br> Jury Trial: *(check one)* ☐ Yes ☒ No |

## COMPLAINT FOR A CIVIL CASE ALLEGING THAT THE DEFENDANT OWES PLAINTIFF A SUM OF MONEY
### (28 U.S.C. § 1332; Diversity of Citizenship)

I. **The Parties to This Complaint**

    A. **The Plaintiff(s)**

        Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Dirk S. Adams |
| Street Address | 1 Aberdeen Way |
| City and County | Cambridge, Middlesex |
| State and Zip Code | Massachusetts 02138 |
| Telephone Number | 4065515022 |
| E-mail Address | dirkadams@mac.com |

# UNITED STATES DISTRICT COURT
for the

Federal District of Massachusetts

| | |
|---|---|
| Dirk S. Adams <br> *Plaintiff(s)* <br> (Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) <br> -v- <br> Miki L. Gissell <br> *Defendant(s)* <br> (Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | Case No. _____ <br> *(to be filled in by the Clerk's Office)* <br><br> Jury Trial: *(check one)* ☐ Yes ☒ No |

## COMPLAINT FOR A CIVIL CASE ALLEGING THAT THE DEFENDANT OWES PLAINTIFF A SUM OF MONEY
### (28 U.S.C. § 1332; Diversity of Citizenship)

**I. The Parties to This Complaint**

    **A. The Plaintiff(s)**

        Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Dirk S. Adams |
| Street Address | 1 Aberdeen Way |
| City and County | Cambridge, Middlesex |
| State and Zip Code | Massachusetts 02138 |
| Telephone Number | 4065515022 |
| E-mail Address | dirkadams@mac.com |

1

    **B.**    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

    Name: Miki L. Gissell

    Job or Title: Chief Compliance Officer

    Street Address:7650 S. Euro Drive, Apt. H202

    City, County, State, Zip Code : Midvale, Salt Lake County, Utah 84047

    Telephone Number: 406-451-2794

    E-mail Address: mgissell@mac.com

## II.    The Amount in Controversy

Plaintiff claims the defendant owes plaintiff $5,000,000 in damages for conversion, per se negligence, negligence, and *quantum meruit*.

## III.    Statement of Claim

1. Plaintiff Dirk Adams ("Adams") and Defendant Miki Gissell ("Gissell") lived together in years 2016-2018 at Adams's ranch in Wilsall, Montana and in Cambridge, Massachusetts in the year 2019.

2. Gissell is currently and has been for some time the Chief Compliance Officer for CBC Mortgage Agency ("CBCMA").

3. During 2019, while in Cambridge, Gissell formed a plan to take the Stolen Policies (see definition below in paragraph 14). In addition, she actually took the Stolen Policies in Cambridge in 2019. Further, Gissell's negligence in leaving Data (as defined in paragraph 14 below) readily available for theft occurred, as it did both before and after Gissell left Massachusetts. Gissell transacted business in Massachusetts and caused tortious injury to Adams in Massachusetts.

4. As a fundamental part of Gissell's responsibilities at CBCMA, Gissell was to prepare and to enforce data privacy policies that protected information like the Data (see definition at para. 14 below).

5. Gissell breached her own policies (stolen from Adams) in extravagant and reckless and, in some cases, intentional ways. Further she did not enforce these privacy policies at CBCMA, ever.

6. CBCMA was created on May 13, 2013 as a subsidiary of the Cedar Band Corporation ("CBC"), which was created as an arm of tribal government under the constitutional authority of the tribal council of the Cedar Band of Paiutes of the Paiute Indian Tribe of Utah (the "Cedar Band"). The Cedar Band is a federally recognized Native American sovereign nation.

7. CBCMA is headquartered at 912 W. Baxter, Suite 150, South Jordan, Utah, 84095.

8. CBC is headquartered at 600 N 100 E, Cedar City, Utah 84721

9. From the fall of 2016 until January 9, 2019, Gissell worked as the Chief Compliance Officer remotely from Adams' ranch.

10. During 2019, Gissell worked as the Chief Compliance Officer remotely from an apartment in Cambridge, Massachusetts. She lived with Adams in Cambridge while he was attending Harvard University's Advanced Leadership Initiative.

11. Starting in January 2020, Gissell moved, without Adams, to 7650 S. Euro Drive, H202, Midvale, Utah, 84047 to work at the headquarters of CBCMA.

12. The current CEO and President of CBCMA proposed this move as a path for Gissell to ultimately replace him as President and in the meantime to become an Executive Vice President and to earn more money. CBCMA also agreed to provide a three-bedroom, two-bathroom apartment at its cost for Gissell.

13. In late April 2020, Gissell stopped all communication with Adams, drove from Midvale, Utah to Adams ranch house in Wilsall, Montana, where over 12 days of unauthorized visits in May, she removed piles of personal property and 12 large crates of documents.

14. Gissell also took several computers that did not belong to her.

15. Upon arriving back in Montana in early June to his home in disarray, Adams discovered that Gissell had left on unprotected computers, flash drives, and in paper form, confidential information on CBCMA customers ("Customer Information"), confidential information on CBCMA and its operations ("Analysis"), CBCMA policies and procedures stolen word for word from Adams ("Stolen Policies"), and Gissell emails, in some cases with attachments, critical of current management of CBCMA and CBC ("Emails"), and collectively to be referred to as "Data." The computers and flash drives were owned by Adams.

16. Gissell had left this Data at Adams' house and other buildings readily available for misuse, theft, and vandalism.

17. Gissell also knew that in 2019 and 2020, there had been unauthorized entry to Adams' house and other buildings by third parties.

18. Gissell's employer, CBCMA and its holding company, CBC, admit that when Gissell was finished looting Adams' ranch house, she left behind on Adams ranch the Data, including Customer Information, Analysis, Stolen Policies, and Emails.

19. CBCMA and CBC were deeply embarrassed that their Chief Compliance Officer was so inept, particularly because they had been slated to promote her further.

20. This Data were found in four different formats: (1) on Apple computers, (2) thumb drives, (3) loose documents, and (4) on PC/Windows computers.

21. This Data was found haphazardly throughout Adams' house, his adjacent log barn, in boxes of files in his garage, and in a commercial building Adams owned in downtown Wilsall. The loose documents, in particular, were found behind file cabinets, under sofa chairs, stuffed into bookcases, as well as under a pile of old catalogs.

22. First, Adams asked Gissell to clean up her mess, but she refused. She was very embarrassed by her colossal failure.

23. Then Adams notified CBCMA and CBC in writing that the Data raised several issues for them and for him and asked if they could help him.

24. Adams was concerned that this Data in such disarray was likely a violation of the Federal Housing Administration privacy policies as well as Ginnie Mae privacy policies, and the Federal Trade Commission's Financial Privacy Rule and Safeguards Rule, both now enforced by the Consumer Financial Protection Board, as well as various states' laws.

25. Paul Terry ("Terry"), the CEO of CBC, responded by threatening Adams with litigation if Adams not only did not clean up Gissell's Data mess, but also insisted that Adams must guarantee that the Data was fully cleaned up and kept secret. Terry took no responsibility for the Data presence in Adams' buildings and on Adams' computers or for the Stolen Policies.

26. Terry also asserted in writing that he was satisfied that there had been no leak of Customer Information and therefore nothing for CBC or CBCMA to do with regard to disclosure.

27. Mr. Terry had no way of knowing whether a breach had occurred since he had not inspected the computers nor determined that the loose documents had not been accessed.

28. Adams declined the opportunity to be a volunteer and voluntary guarantor to remedy serious errors not made by him.

29. Upon information and belief, CBCMA's and CBC's primary objective was to keep the consequences of Gissell's conduct secret from regulators, customers, and others.

30. They have stated repeatedly that the damages to Adams from the Data were the responsibility not of CBCMA nor of CBC but of Gissell.

31. Both organizations told Adams to seek his damages from her, not them.

### For a First Cause of Action Against Gissell for Conversion

32. Plaintiff repeats and realleges paragraphs 1-31 herein.

33. The Stolen Policies also included excel spreadsheets for analysis and excel spreadsheets and word documents for effective presentations and other management tools that belonged to Adams.

34. By taking and using these policies, procedures, spreadsheets, word documents and other management tools not belonging to her, Gissell made herself look better to CBCMA and CBC senior management, enhancing her reputation for breadth and depth of knowledge, competence and efficiency. This reputation was entirely unearned, except for loan origination compliance, which was the only area of compliance management with which Gissell had had any experience or knowledge.

35. Gissell's theft of the Stolen Policies damaged Adams in the mount of $250,000.

### For a Second Cause of Action Against Gissell for Negligence *Per Se*

36. Plaintiff repeats and realleges paragraphs 1-31 herein.

37. Gissell owed a duty of care to Adams to protect him from her reckless conduct.

38. Gissell's conduct in exposing the Data, particularly Customer Information, and her failure to enforce privacy policies at CBCMA violated the Federal Trade Commission's Financial Privacy Rule and the Safeguards Rule.

39. As a consequence, Gissell conduct with regard to the Data is negligence *per se*.

40. Gissell's negligence *per se* damaged Adams in the amount of $500,000.

### For a Third Cause of Action Against Gissell for Negligence

41. Plaintiff repeats and realleges paragraphs 1-31 herein.

42. Gissell owed Adams a duty of care with regard to the Data that she left on insecure computers, thumb drives, and in loose form scattered among three buildings, all owned by Adams.

43. Gissell owed Adams a duty to warn him of what Data was present and where and particularly to alert him to Customer Information and Data in loose paper form so that Adams could protect himself from the risks and damages that arose when she failed to warn.

44. Gissell also owed Adams a duty to protect the Data pursuant to CBCMA policies she "wrote" and to otherwise comply with Financial Privacy and Safeguard Rules as well as the FHA and Ginnie Mae privacy rules.

45. Gissell also owed Adams a duty to repair the damage she had caused.

46. Adams was exposed to the risks and damages arising from threats by CBCMA and CBC to sue him, of customers concluding that he had accessed their Customer Information, of regulators and other third parties thinking that he was responsible for the irresponsible distribution of Data about his property

47. Adams also was required to take action and to spend money to protect himself and the Data, which time, effort, and money would not have been necessary but for Gissell's negligence.

48. Gissell breached her duty of care and duty to warn and duty to repair and damaged Adams in the amount of five million dollars.

### For a Fourth Cause of Action Against Gissell for *Quantum Meruit*

49. Plaintiff repeats and realleges paragraphs 1-31 herein.

50. Adams has been compelled by Gissell's irresponsible conduct with the Data to search computers, thumb drives, boxes, buildings, and furniture for Data, a task which he did not volunteer to do.

51. In addition, he has had to deal with the senior officers and their lawyers of CBCMA and CBC in their various attempts to resolve the issues raised by the Data and to be subjected to their threats.

52. And he has had to make sure that all the Data is safe guarded at his own expense, time and effort.

53. And now Adams will have to determine, with the advice of experts, how to handle the Data and to investigate the Customer Information breaches, and to otherwise pursue a lawful course of conduct with regard to the Data.

54. Adams believes that it is likely that there is still more Data to be discovered because he has, to date, not sought to conduct a search for mislaid Data in a systematic way.

55. Gissell sought all this effort by Adams.

56. All of Adams effort has redounded to the benefit of Gissell, for which she has not paid.

57. Gissell owes Adams $500,000 in *quantum meruit*.

## IV. RELIEF

THEREFORE, Adams requests that this Court award him damages as follows:

A. Actual damages for conversion of $250,000;

B. Actual damages for negligence *per se* of $500,000;

C. Actual damages for negligence of $5,000,000;

D. Actual damages in *quantum meruit* of $500,000; and

E. Such other and further relief as this Court determines to be appropriate and just.

**DATED:** July 14, 2020:

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically, so identified, will likely have

evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____

Dirk S. Adams

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

_____

Dirk S. Adams