**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| DIRK S. ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. NO. 1:20-cv-11366-PBS-MPK |
| | ) | |
| v. | ) | |
| | ) | |
| MIKI L. GISSELL and | ) | |
| RICHARD FERGUSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MIKI L. GISSELL'S**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant Miki L. Adams, née Gissell (hereafter, "Gissell"), by and through her counsel, respectfully submits this memorandum of law in support of her motion to dismiss Plaintiff's Amended Complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1); lack of personal jurisdiction under Rule 12(b)(2); lack of standing, improper venue, and failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).  In the alternative, Gissell moves this Court to stay further proceedings in this action pending resolution of Gissell's petition to dissolve her marriage to Plaintiff Dirk S. Adams in Montana state court.  Gissell also moves this Court to strike certain irrelevant, impertinent, and scandalous allegations, as detailed herein, pursuant to Rules 8(d)(1) and 12(f)(2).

As is painfully obvious from the caustic and irrelevant allegations throughout the Amended Complaint, Plaintiff and Gissell are in the midst of a divorce being adjudicated in Montana state court.  After Gissell filed a verified petition for dissolution of marriage (the "Divorce Petition") on May 21, 2020, Plaintiff embarked on a campaign to harass, embarrass, and threaten Gissell by filing a slew of frivolous lawsuits against her and those closest to her, including her daughters, her

boss, and her friend and neighbor.  To date, Plaintiff has filed at least twelve lawsuits in the state and federal courts of Massachusetts, Montana, Minnesota and Utah.  Plaintiff's lawsuits have found no purchase in any of those cases, and the majority have already been dismissed or stayed. But as the Court can plainly see, Plaintiff's harassment continues.

Plaintiff, a licensed attorney appearing *pro se*, [1] seeks to circumvent the jurisdiction of the Montana court adjudicating the Divorce Petition (the "Montana Court") by asking this Court to determine which spouse owns alleged intellectual property and to award damages for his wife's alleged use of it.  Plaintiff also asks the Court to hold that Gissell allegedly left confidential documents where Plaintiff could access them without permission.  He added Gissell's boss, Richard Ferguson (hereafter, "Ferguson") to this action in a transparent effort to slander, embarrass, and harm Gissell professionally.  There is no merit to any of Plaintiff's claims.

The Amended Complaint should be dismissed for a litany of reasons.  *First*, the Court lacks subject matter jurisdiction because Plaintiff does not—and cannot—allege full diversity of citizenship under 28 U.S.C. § 1332(a)(1).  *Second*, the Court lacks personal jurisdiction over Gissell because, as Plaintiff alleges, the events giving rise to Plaintiff's claims arose in Montana and were unrelated to Gissell's limited contacts with Massachusetts.  *Third*, this Court is not the proper venue for this action.  *Fourth*, Plaintiff lacks standing to pursue Claim III (negligence per se), Claim IV (negligence), and Claim VI (*quantum meruit*).  And *fifth*, Plaintiff fails to state a claim for relief under any of his six claims.

Even if those fatal defects were somehow overcome, Plaintiff's claims against Gissell still should be dismissed because he fails to state a claim for any of the six causes of action he asserts because Plaintiff fails to plead all required elements of his claims against Gissell and fails to plead

---

[1] While he appears *pro se* in this action, Plaintiff is an active member of the State Bar of California, *see* Ex. C (Adams – CA State Bar) at 1, and purports to be a former trial attorney, *see* Ex. D (Adams – Harvard Bio) at 1.

Claim II (deceit) and Claim V (misrepresentation) with the requisite particularity, as detailed below.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.      Plaintiff's Allegations Against Gissell**

On July 20, 2020, Plaintiff filed his original complaint (the "Original Complaint") against his soon-to-be ex-wife, Defendant Miki L. Adams, under her maiden name, Miki L. Gissell,[2] alleging conversion, negligence *per se*, negligence and *quantum meruit*.  *See* Dkt. No. 1 (Or. Compl.) ¶¶ 32–57.  Gissell, proceeding *pro se*, moved to dismiss the Original Complaint for failure to state a claim and insufficient service of process, and the doctrine of claim preclusion.  *See* Dkt. No. 6 (Mot. to Dismiss).  Plaintiff opposed Gissell's motion and separately moved to dismiss it.  *See* Ex. A (Docket, *Adams v. Gissell et al.*, C.A. No. 1:20-cv-11366-PBS-MPK (D. Mass.)) at 2.[3]

While both motions were pending, Plaintiff served Gissell with an amended complaint (the "Amended Complaint") on September 25, 2020.[4]  *See id.*  The Amended Complaint added Richard Ferguson, the Chief Executive Officer of Gissell's employer, CBC Mortgage Agency ("CBCMA"), as well as claims for deceit and misrepresentation.  *See* Am. Compl. ¶¶ 3, 108–14, 133–40.

---

[2] Plaintiff inexplicably filed this suit against Gissell in her maiden name, despite knowing that she still uses her married name, Miki L. Adams.  In the interest of clarity, we refer herein to Miki Adams by her maiden name, "Gissell."

[3] Citations denominated as "Ex. _" refer to exhibits to the Declaration of Timothy D. Swain, dated December 21, 2020, filed herewith in support of Gissell's Motion to Dismiss (the "Swain Declaration" or "Swain Decl.").  It is well established that the Court may consider the attached exhibits and other materials outside the pleadings on a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction without converting the Motion to a Rule 56 motion for summary judgment.  *See, e.g., Gonzalez v. United States*, 284 F3d 281, 288 (1st Cir. 2002) (holding that documents attached to Rule 12(b)(1) motion properly considered for the purpose of determining the court's subject-matter jurisdiction).

[4] Not long thereafter, Gissell retained the undersigned counsel.

The Amended Complaint boils down to two distinct, baseless theories. *First*, Plaintiff alleges that Gissell took from Plaintiff, her husband, certain "policies, procedures, spreadsheets, word documents and other management tools not belonging to her"—which, Plaintiff argues, constitute his "intellectual property" (Plaintiff's "Policies")—and used them to "ma[ke] herself look better to CBCMA and CBC senior management," including Ferguson. *Id.* ¶¶ 104–114.

*Second*, Plaintiff claims that Gissell, while employed by CBCMA as its Chief Compliance Officer, allegedly "fail[ed] to provide robust information security for [CBCMA] customer financial data" (the "Data") in "violat[ion of] the Federal Trade Commission's Safeguards Rule, 12 CFR Part 314," as well as the Fair Housing Act ("FHA") "privacy policies," "expos[ing] CBCMA's customers and CBCMA to financial loss." *Id.* ¶ 73.  Plaintiff does not allege that he works for, holds any interest in, or is a customer of CBCMA.  Nevertheless, Plaintiff alleges that Gissell's failure to comply with these rules and policies somehow harmed him.

The remainder of Plaintiff's allegations are wholly irrelevant to any of Plaintiff's claims and are an assault on Gissell's professional competence and personal reputation in an apparent effort to harass and harm Gissell. *See Id.* ¶¶ 11, 13, 15–31, 39, 42–44, 46–51, 58–64, 68, 71, 77–78, 84, 89, 92, 98, 99, 100–02, 105.[5]

**B.    Plaintiff's Campaign of Harassing and Threatening Litigation**

Conspicuously absent from Plaintiff's allegations is any acknowledgement of Plaintiff's marriage to Gissell or the Divorce Petition. See Ex. M (Divorce Petition).  In response to Plaintiff's threats and harassment,  Gissell sought and obtained an order of protection against Plaintiff in those divorce proceedings on May 11, 2020.[6]  *See* Ex. B (Order of Protection).

---

[5] Those irrelevant and scandalous actions are the subject of Gissell's separate Motion to Strike Certain Allegations from the Amended Complaint (Gissell's "Motion to Strike"), also filed on December 21, 2020.

[6] Before his campaign of harassing litigation commenced, the Montana Court issued a temporary order of protection (the "Order of Protection") based on Plaintiff's threatening and harassing conduct against Gissell.  *See* Ex. B (Order

Nevertheless, Plaintiff filed over the proceeding months at least twelve baseless and vexatious lawsuits against Gissell, her two daughters, her neighbor, her employer, and others, as part of a campaign to use his knowledge of the legal system to harass and threaten Gissell, including:

- *Adams v. Kira Gissell et al.*, No. 20STCV29218 (Cal. Super. Ct., L.A. Cty.);
- *Adams v. Gissell*, Cause No. CV-20-1518 (Mont. Justice Court, Park Cty.);
- *Adams v. Adams*, No. DR-20-43 (Mont. Dist. Court, 6th Dist., Park Cty.);
- *Adams. v. Beal*, No. 2052SC000321 (Mass. Dist. Court, Cambridge Cty.);
- *Adams. v. Adams*, No. 2052SC000318EF (Mass. Dist. Court, Cambridge Cty.);
- *Adams v. Gissell*, No. 2081CV01474 (Mass. Dist. Court, Middlesex Cty.);
- *Adams v. Gissell*, No. 27-cv-20-9089 (Minn. Dist. Court, Hennipen Cty.);
- *Adams v. Gissell*, No. CV-20-200903796 (Utah Dist. Court, 3rd Dist., Salt Lake Cty.);
- *Adams v. Gissell*, No. CV-20-4003250 (Utah Dist. Court, 3rd Dist., Salt Lake Cty.);
- *Adams v. Midori Gissell*, (Utah Dist. Court, 3rd Dist., Salt Lake Cty.);
- *Adams v. Midori E. Gissell et al.*, No. 1:20-cv-00135-SPW-TJC (D. Mont.).

## C.   Plaintiff's Montana Citizenship

In his Amended Complaint, Plaintiff alleges that he "is a resident of Middlesex County, Massachusetts," Am. Compl. ¶ 1, but does not allege citizenship of any State.  Plaintiff's claim is contradicted by papers Plaintiff filed in other lawsuits just before and after filing the Original Complaint—as well as by public records and his own emails—including where Plaintiff claims to be "***a Montana resident, domiciled in Park County, Montana***."  Ex. E (Montana Complaint – CV-20-1518) ¶¶ 1, 3 (emphasis added).  For instance:

- On May 21, 2020, Plaintiff filed a complaint against Gissell in Montana Justice Court, County of Park, in which he alleged that he "is a rancher outside of Wilsall, Montana," and

---

of Protection) at 1–4.  The Order of Protection, *inter alia*, forbid Plaintiff from "harass[ing], threaten[ing], abus[ing], follow[ing], stalk[ing], annoy[ing] or disturb[ing] the peace of" Gissell.  *Id.* at 2.

"a U.S. citizen and *a Montana resident, domiciled in Park County, Montana*."  *Id.* ¶¶ 1, 3 (emphasis added).

- On May 25, 2020, Plaintiff initiated a small claim trial in Massachusetts (the "Small Claim Action") seeking reimbursement for expenses he allegedly incurred in "*moving back from Cambridge to his Montana ranch*," including "air travel, auto expense, hotel and food expense, as well as moving costs for moving Adams and Gissell personal property *back to Montana*."  Ex. F (MA Statement of Small Claim) at 1–2 (emphasis added).

- On May 28, 2020, Plaintiff filed another complaint, this time against Gissell's daughter, Midori, in which he alleges that he "is a rancher outside of Wilsall, Montana, living at 729 Shields River Road, Wilsall, Montana 59086."  Ex. G (Utah Complaint – CV-20-1518) ¶¶ 1, 3 (emphasis added).

- On June 9, 2020, Plaintiff petitioned the Utah District Court, Third Judicial District, Salt Lake County, for dissolution of marriage (the "Utah Petition").  *See* Ex. H (Utah Divorce Petition).  In the Utah Petition, Plaintiff alleged that he "is a rancher outside of Wilsall, Montana, living at 729 Shields River Road, Wilsall, Montana 59086."  *Id.* ¶ 1.

- On August 9, 2020, Plaintiff filed a Respondent Declaration in Opposition to Petitioner's MCA 40-4-121 Motion for Possession of House in Montana District Court, Sixth Judicial District, Park County, in which he claimed that "729 Shields River Road has been husband's home since 1984, or more than 35 years," and that he "starts living at the house full time in 1996, or approximately 25 years ago, or five times as long as wife can claim." Ex. I (Montana Response – DR-20-43) ¶ 41.

- On October 12, 2020, Plaintiff filed Husband's Address Change Notice in the Montana Court adjudicating the Divorce Petition, in which he "advise[d] the Court, the Clerk, and

Petitioner's two legal counsel that EFFECTIVE OCTOBER 14, 2020 his correct mailing address will be P.O. Box 401, Wilsall, Montana, 59086." Ex. J (Husband's Address Change Notice – DR-20-43) at 1.

Other public records also show that Plaintiff is a citizen of Montana. Plaintiff currently is registered to vote Montana, where he voted in the most-recent 2020 federal election. *See* Ex. K (D. Adams My Voter Page – Montana Secretary of State) at 1. The Montana voter records indicate that Plaintiff's voting status is "ACTIVE" and list Plaintiff's Residence and Mailing Addresses as "729 SHIELDS RIVER RD WILSALL MT 59086." *Id.*

Plaintiff even confirmed in writing that he was leaving Cambridge for Montana well before commencing this action. On May 15, 2020—over a month *before* filing the instant action— Plaintiff informed Gissell by email that he was moving out of their Cambridge apartment back to Montana. *See* Ex. L (May 15, 2020 Email from D. Adams to M. Adams) at 1. Therein, Plaintiff explains that he is moving the furniture from their Cambridge apartment "to a location where we can discuss who gets what at another time." *Id.*

## ARGUMENT

### A. The Court Lacks Subject Matter Jurisdiction Over This Action Because Plaintiff Does Not—and Cannot—Allege Complete Diversity of Citizenship

Plaintiff's Amended Complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(1) because he fails to allege, as required, that the parties are "citizens of different States." *See* 28 U.S.C. § 1332(a)(1). *First*, the Amended Complaint alleges only the *residencies* of the parties, which is insufficient to confer jurisdiction. *Second*, Plaintiff is a citizen of Montana, a fact that, as detailed above, is supported by public documents and papers Plaintiff filed in other, concurrent litigation against Gissell and her family.

Plaintiff carries the burden of establishing subject matter jurisdiction. *See Calderon-Serra v. Wilmington Trust Co.*, 715 F.3d 14, 17 (1st Cir. 2013). While "a district court consider[ing] a Rule 12(b)(1) motion . . . must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor," this Court "may also 'consider whatever evidence has been submitted, such as the depositions and exhibits submitted,'" by either party. *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).

This Court has diversity jurisdiction only over actions "between . . . *citizens* of different States." 28 U.S.C. § 1332(a)(1) (emphasis added). "'Citizenship' in a state is the equivalent of 'domicile'" at the time the suit was filed. *Lundquist v. Precision Valley Aviation*, 946 F.2d 8, 10 (1st Cir.1991).

For diversity purposes, "domicile" is defined as "the place where [plaintiff] has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Rodriguez-Diaz v. Sierra-Martinez*, 853 F.2d 1027, 1029 (1st Cir. 1988) (internal quotation marks and citation omitted). Plaintiff therefore must prove by a preponderance of the evidence that, at the time he filed the Original Complaint, he was (1) physically present in Massachusetts, and (2) intent on making Massachusetts his home. *See id.*

Courts will look to various factors to determine whether jurisdiction attached, including, *inter alia*, the place where civil and political rights are exercised, taxes are paid, property is located, driver's licenses are obtained, and the places of business or employment. *See, e.g.*, *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 50 (1st Cir. 1992). "While no single factor is controlling, some courts have established a presumption of domicile in the state in which a party is registered to vote." *Id.* In the First Circuit, the state in which a party is registered to vote is a "weighty" factor in the analysis. *Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 32 (1st Cir. 2008). Where

the plaintiff alleges the establishment of a new domicile, "court[s] must not only weigh the quantity and quality of the ties to the [alleged] new domicile but also the bridges to the former domicile that remain." *Leon v. Caribbean Hosp. Corp.*, 848 F. Supp. 317, 318 (D.P.R. 1994); *see also Murphy v. Newport Waterfront Landing, Inc.*, 806 F. Supp. 322, 324 (D.R.I. 1992) (holding that party registered to vote in Massachusetts was domiciled there despite showing he moved to Nebraska, where he never registered to vote).

Plaintiff fails to allege complete diversity of citizenship necessary to establish this Court's jurisdiction over this action. In the Amended Complaint, Plaintiff merely alleges the *residencies* of the parties, not their citizenship. *See* Am. Compl. ¶¶ 1–3.

Even if Plaintiff had sufficiently *pled* complete diversity, Plaintiff is, in fact, a citizen of Montana. He is registered to vote in Montana, and according to public records, voted in Montana this year, *see* Ex. K (D. Adams My Voter Page – Montana Secretary of State) at 1, a factor to which the First Circuit ascribes great weight, *see Padilla-Mangual*, 516 F.3d at 32.

Moreover, as noted above, Plaintiff has repeatedly alleged his Montana citizenship in other litigation commenced around the same time as the instant action. For example, in the six weeks before commencing this action, Plaintiff filed four separate pleadings in four different courts that undermine his claimed Massachusetts residency. *See* Ex. E (Montana Complaint – CV-20-1518) ¶¶ 1, 3 (alleging Plaintiff "is a rancher outside of Wilsall, Montana," and "a U.S. citizen and ***a Montana resident, domiciled in Park County, Montana***") (emphasis added); *see also* Ex. F (MA Statement of Small Claim) at 1–2 (seeking reimbursement for moving and other expenses he allegedly incurred in "*moving back from Cambridge to his Montana ranch*") (emphasis added); Ex. G (Utah Complaint – CV-20-1518) ¶¶ 1, 3 (alleging that Plaintiff "is a rancher outside of

Wilsall, Montana, living at 729 Shields River Road, Wilsall, Montana 59086") (emphasis added); Ex. H (Utah Divorce Petition) ¶ 1 (same).

In the intervening months, Plaintiff also has filed at least two documents to the same effect. *See* Ex. I (Montana Response – DR-20-43) ¶ 41 (opposing Gissell's Motion for Possession of House in divorce proceedings by alleging that "729 Shields River Road has been husband's home [for] . . . more than 35 years," since he "start[ed] living at the house full time in 1996"); *see also* Ex. J (Husband's Address Change Notice – DR-20-43) at 1 (filing Husband's Address Change Notice on October 12, 2020, stating that "EFFECTIVE OCTOBER 14, 2020 his correct mailing address will be P.O. Box 401, Wilsall, Montana, 59086").

Those filings indicate that Plaintiff moved back to Montana weeks before filing the Original Complaint. Plaintiff cannot claim different citizenship in different actions, depending on what helps him most under the circumstances. Nor can Plaintiff claim Massachusetts citizenship in July of 2020 while contemporaneously seeking reimbursement of expenses allegedly incurred "moving back" to Montana in May of 2020.

Plaintiff has not met his burden to show he is domiciled in Massachusetts. In any event, Plaintiff is, in fact, a citizen of Montana. Accordingly, the Court should dismiss Plaintiff's claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

**B.  The Court Does Not Have Personal Jurisdiction Over Gissell**

The Amended Complaint should be dismissed for the additional reason that the Court lacks personal jurisdiction over Gissell.

In his Amended Complaint, Plaintiff attempts to plead specific personal jurisdiction[7] over Gissell by alleging that she "resided in Middlesex County, Massachusetts for the entire year 2019

---

[7] Plaintiff does not—and cannot—allege that the Court has general personal jurisdiction over Gissell. Therefore, Gissell addresses only specific personal jurisdiction herein.

and during that time transacted business in Massachusetts and committed torts in Massachusetts." Am. Compl. ¶ 2.  Yet, as detailed below, the remainder of Plaintiff's allegations do not support— and even contradict—that allegation.  *See* Am. Compl. ¶¶ 79–88.

To assert personal jurisdiction over an out-of-state defendant, Plaintiff must satisfy both the Massachusetts Long Arm Statute and the Due Process Clause of the Fourteenth Amendment. *See Cossart v. United Excel Corp.*, 804 F.3d 13, 18 (1st Cir. 2015).  To satisfy Massachusetts' Long Arm Statute, Plaintiff must show that his action "aris[es] from" Gissell's "transacting any business in this commonwealth"; "causing tortious injury by an act or omission in this commonwealth"; or "causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth."  G.L. c. 223A, § 3(a)–(d).

To satisfy the requirements of the Due Process Clause of the Fourteenth Amendment when asserting personal jurisdiction over a non-resident, "the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "[T]he relationship must arise out of contacts that the defendant *himself* creates with the forum State," and "however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated."  *Walden*, 571 U.S. at 284–85 (internal quotation marks and citations omitted).  The "'minimum contacts' analysis looks to the defendant's contacts

with the forum State itself, not the defendant's contact with persons who reside there."  *Id.* at 285

(citing *Int'l Shoe Co.*, 326 U.S. at 319).[8]

Gissell lacks the "minimum contacts" with Massachusetts that are "a prerequisite to the exercise of jurisdiction over" her.  *See Walden*, 571 U.S. at 288.  Plaintiff does not allege that Gissell engaged in any conduct in Massachusetts giving rise to his claims.  To the contrary, Plaintiff alleges in support of his negligence per se, negligence, and *quantum meruit* claims that Gissell "reckless[ly] abandon[ed]" the Data "at Adams' house, garage, adjacent log barn, and in a commercial building," all in Montana, Am. Compl. ¶¶ 81–82; that the "Data was found haphazardly throughout Adams' house, his adjacent barn, in boxes of files in his garage, and in a commercial building Adams owned in downtown Wilsall," Montana, *id.* ¶ 88; and that Gissell was aware of risks to the Data because she "knew that in 2019 and 2020, there had been unauthorized entry to Adams' house and other buildings" in Montana, *id.* ¶ 83.  The allegations clearly preclude the exercise of personal jurisdiction over Gissell with respect to Plaintiff's negligence per se, negligence, and *quantum meruit* claims.

Plaintiff also asserts that the alleged conduct giving rise to his remaining claims for the remaining claims for conversion, deceit, and misrepresentation took place outside of Massachusetts.  He alleges that Gissell did not move to Massachusetts until 2019.  *Id.* ¶¶ 32–33.  He also alleges that "as a result of conversations with Gissell in 2019 as well as in *earlier* conversations, Ferguson knew that Gissell had stolen policies, procedures, and analytical methods

---

[8] For a more in-depth discussion of the legal standard, please see the Memorandum of Law in Support of Defendant Richard Ferguson's Motion to Dismiss the Amended Complaint or, in the Alternative, Motions to Strike Allegations and for a Stay Pending Resolution of Divorce Proceedings in Montana, filed December 21, 2020.

and models and formats." *Id*. ¶ 74 (emphasis added). If Gissell's alleged theft occurred *earlier* than 2019, it was not in Massachusetts.[9]

The Court, therefore, should dismiss all of Plaintiff's claims against Gissell.

## C.  The District of Massachusetts Is Not the Proper Venue for Plaintiff's Action

Regardless of whether Plaintiff's claims in his Amended Complaint hold merit, the Court should dismiss Plaintiff's Amended Complaint because the District of Massachusetts is an improper venue for this action.

Whether venue is "wrong" or "improper" is generally governed by 28 U.S.C. § 1391. "A civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *Id.* § 1391(b). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 56 (2013).

Here, Plaintiff's case does not fall within any of the three categories set out in § 1391(b). The Defendants are not Massachusetts residents; Plaintiff claims the "Data" and "Policies" were

---

[9] Plaintiff describes at length the alleged circumstances surrounding one, less-then-24-hour period in 2019 when Ferguson traveled to Massachusetts to meet with Gissell and discuss her possible promotion. *See* Am. Compl. ¶¶ 46–64. However, Plaintiff does not explain how, if at all, that meeting was part of Gissell's alleged theft of the Policies or the alleged Data breach. Those allegations are entirely irrelevant and, in many respects, scandalous, and should be stricken from the Amended Complaint. *See* Gissell's Mem. of Law in Support of Mot. to Strike.

located in Montana; and Plaintiff is well aware that other judicial districts exist as he has filed at least twelve lawsuits against Defendant. *See supra* at 5. In addition, Plaintiff and Gissell are currently in a divorce proceeding which was filed in Park County, Montana, on May 11, 2020, Cause No. DR-20-43. As such, the proper venue for this matter rests with the Montana Sixth Judicial District Court, located in Park County, Montana. Further, a dispute between spouses over who owns the "Data" and "Policies" should be resolved in the ongoing divorce proceeding.

Venue in this Court is improper and the Amended Complaint should be dismissed.

### D. Plaintiff Does Not Have Standing to Bring His Negligence Per Se, Negligence, and *Quantum Meruit* Claims

Even if the Court finds that it has subject-matter jurisdiction over this action and personal jurisdiction over Gissell, and that this is the proper venue, Claims III (Negligence Per Se), IV (Negligence) and VI (*Quantum Meruit*) should be dismissed for lack of standing.

Plaintiff bears the burden to establish standing. *See, e.g.*, *LaCroix v. Bos. Police Dep't*, 454 F. Supp. 3d 97, 102 (D. Mass. 2020). To do so, Plaintiff must show that: (1) he suffered a concrete injury that is actual or imminent (injury in fact); (2) there is a causal connection between the injury and the conduct alleged (causation); and (3) the injury can be redressed through a favorable ruling (redressability). *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "If a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying case." *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992).

Plaintiff fails to allege any concrete injury that is actual or imminent. Rather, Plaintiff claims that he "was exposed to the *risks* and damages arising from threats by CBCMA and CBC to sue him, of customers *concluding* that he had accessed their Customer Information, of regulators and other third parties *thinking* that he was responsible for the irresponsible distribution of Data about his property." Am. Compl. ¶ 130 (emphasis added). However, "[i]t is not enough to allege

14

facts from which it is possible to 'imagine' an injury," and mere "risks" of harm do not confer standing. *See In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1162 (N.D. Ga. 2019).

Plaintiff also fails to allege causation. Plaintiff alleges that he "did not volunteer," but was "compelled *by Gissell's and Ferguson's irresponsible conduct*," to "to search computers, thumb drives, boxes, buildings, and furniture for Data" to "make sure that all the Data is safe guarded [sic]." Am. Compl. ¶¶ 142, 144 (emphasis added). He does not, however, allege how or why Gissell's alleged conduct—leaving her computer and documents where they had been, in her home and office, after filing the Divorce Petition—forced Plaintiff to search Gissell's business files or otherwise interfere with those records. Plaintiff alleges no legal or other duty to take any action or other reason for doing so, and therefore his actions were entirely voluntary. Plaintiff's baseless belief that someone, somewhere would sue him if he left the Data alone does not create a legally cognizable injury for which Defendants are responsible.

As Plaintiff fails to allege facts sufficient to establish standing, Claims III (Negligence Per Se), IV (Negligence) and VI (*Quantum Meruit*) of the Amended Complaint should be dismissed.

**E.  The Amended Complaint Fails to State A Single Claim for Relief**

Even if the Court does not dismiss the Amended Complaint for lack of subject-matter or personal jurisdiction, improper venue, or lack of standing, all six of Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

The Court may grant a motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) "'if it appears that upon any set of facts which may be inferred from the complaint the plaintiff will be unable to recover.'" *Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 7 (D. Mass. 2004) (Saris, J.) (quoting *Danio v. Emerson College*, 963 F. Supp. 61, 62 (D. Mass.

1997)).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts that "raise a right to relief above the speculative level" and "nudge[] [the] claims across the line from conceivable to plausible."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  A plaintiff must plead sufficient facts from which a court can reasonably infer that the defendant is liable for the alleged misconduct.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

However, "'a reviewing court is obligated neither to credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation, nor to honor subjective characterizations, optimistic predictions, or problematic suppositions.'"  *Gibbs*, 336 F. Supp. 2d at 8 (quoting *Am. Tel. & Tel. Co. v. IMR Capital Corp.*, 888 F. Supp. 221, 251–52 (D. Mass. 1995)).

The allegations set forth in Plaintiff's Amended Complaint fall far short of that pleading standard and, thus, should be dismissed.

### 1.  Plaintiff Fails to Allege Conversion

Plaintiff's conversion claim should be dismissed for at least two independent reasons: *first*, Massachusetts law and binding Court precedent preclude recovery for the conversion of intangible property, such as Plaintiff's alleged "Policies"; and *second*, Plaintiff fails to plead ownership over the alleged intellectual property.

To plead a conversion claim under Massachusetts law, a plaintiff must allege that:

> (1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused.

*Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 95 (1st Cir. 1993). Notably, the District of Massachusetts "has consistently held that a plaintiff is *not* entitled to

recover for conversion of intangible property." *Blake v. Prof'l Coin Grading Serv.*, 898 F. Supp. 2d 365, 386 (D. Mass. 2012) (emphasis added).

First, Plaintiff's conversion allegations fail as a matter of law because they concern only intangible property, i.e., "policies, procedures, spreadsheets, word [sic] documents and other management tools," as well as "excel spreadsheets for analysis and excel spreadsheets and word [sic] documents for effective presentations and other management tools that belong to Adams" (the "Policies"). Am. Compl. ¶¶ 105, 109. Plaintiff claims the Policies "were his intellectual property." *Id.* ¶¶ 110–11. This Court has consistently held that claims like these fail as a matter of law. *See, e.g.*, *Blake*, 898 F. Supp. 2d at 386. For example, in *Blake*, a plaintiff sought to recover for the alleged "conversion of trade secrets, intellectual property, royalties, and sale proceeds," including plaintiff's "marketing plan," which the court properly classified as "intangible property" under Massachusetts law and therefore dismissed as not actionable. *Id.*

Second, Plaintiff's conversion claim fails because he does not allege any facts showing the Policies are intellectual property that he owns. Plaintiff merely asserts that the Policies are "his intellectual property," without setting forth any legal basis for his claim that the Policies are properly classified as such. *See* Am. Compl. ¶ 110. Plaintiff does not allege that the Policies are patented or copyrighted, nor does he allege that they are a trade secret—which would require describing the alleged trade secret with particularity. *See, e.g.*, *TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*, 966 F.3d 46, 54 (1st Cir. 2020). Moreover, Plaintiff's conversion claim fails because he fails to plead ownership of the Policies. *See, e.g.*, *Jayson Assocs., Inc. v. UPS Co.*, No. Civ.A.04-10771-RWZ, 2004 WL 1576725, at *2 (D. Mass. July 15, 2004) (dismissing conversion claim where, as here, plaintiff "does not allege that it owns the . . . idea in any legal

sense," even though plaintiff alleges "that the [alleged intellectual property] had a copyright label on them" but "nowhere argues that it actually owns a copyright").

Therefore, Plaintiff's claim for conversion should be dismissed.

    2.  <u>Plaintiff's Amended Complaint Fails to Allege Deceit with Sufficient Particularity, and Fails to Allege Detrimental Reliance in Any Respect</u>

Plaintiff's second cause of action for deceit should be dismissed because Plaintiff fails to allege deceit with particularity and fails to allege detrimental reliance.

To state a claim for deceit "under Massachusetts law, a plaintiff must show that the defendant: made a false representation of material fact; for the purpose of inducing reliance; and that plaintiff relied upon the representation to his or her detriment." *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 23 (1st Cir. 2001) (citing *Danca v. Taunton Sav. Bank,* 385 Mass. 1, 8 (1982)). Massachusetts law categorizes a claim of deceit as an intentional tort, *see Mohr v. Com.*, 421 Mass. 147, 164, 166 (1995), and as a species of fraud, *see Cummings*, 244 F.3d at 23.

Because Plaintiff's deceit claim is a species of fraud, it is subject to the requirements of Federal Rule of Civil Procedure 9(b), which requires that such claims be pleaded with particularity. *See Andrews v. S. Coast Legal Servs., Inc.*, 582 F. Supp. 2d 82, 90 (D. Mass. 2008). "It is well-established in the First Circuit that, in fraud cases, Rule 9(b) requires a plaintiff to specify the time, place, and content of an alleged misrepresentation." *Rhone v. Energy North, Inc.*, 790 F. Supp. 353, 361 (D. Mass. 1991). In other words, the pleader "is expected to specify the who, what, where, and when of the allegedly false or fraudulent representation." *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004).

Plaintiff's claims are not pled with particularity. Plaintiff has not alleged with specificity any false representation of material fact made by Gissell, nor has Plaintiff alleged that he relied on any alleged misrepresentations to his detriment. Rather, Plaintiff alleges generally that "Gissell

misrepresented to [Plaintiff] repeatedly that she was not taking and using this intellectual property, while slyly using it."  Am. Compl. ¶ 112.  In other words, Plaintiff only alleges that Gissell lied when asked whether she "had been stealing his lender policies and procedures and his analytical methods, models and forms."  Am. Compl. ¶¶ 86, 112.  Those allegations are insufficient because Plaintiff never alleges the specifics of the alleged misrepresentation.  Nor does Plaintiff allege that misrepresentations were made to induce reliance thereon, or that he relied on them to his detriment.  In fact, aside from his ridiculous damages sum, Plaintiff does not specify any "detriment" that he incurred as a result of Gissell's vaguely alleged misstatements at all.  Without specific allegations to each of the elements of deceit and misrepresentation, Plaintiff's claims should be dismissed.

### 3. Massachusetts Does Not Recognize Negligence Per Se as a Separate Cause of Action

Plaintiff's cause of action for negligence per se should be dismissed because Massachusetts does not recognize it as a separate cause of action.  "It has long been the rule in this Commonwealth that violation of a statute does not by itself establish a breach of duty, for it does not constitute negligence per se."  *Bennett v. Eagle Brook Country Store, Inc.*, 408 Mass. 355, 358–59 (Mass. 1990); *see also Juliano v. Simpson*, 461 Mass. 527, 532 (Mass. 2012) ("The Commonwealth does not follow the doctrine of negligence per se.").  "A duty of care must already exist before a plaintiff can use a defendant's statutory violation to support a claim of tort liability."  *Juliano*, 461 Mass. at 532.

Thus, where the statute at issue "does not expressly or implicitly grant an independent ground for civil liability," "[a]ny liability on the defendant's part . . . must be grounded in the common law of negligence, . . . meaning that the plaintiff has the burden of proving each and every element of that claim:  duty, breach of duty (or, the element of negligence), causation (actual and proximate) and damages."  *Bennet*, 408 Mass. at 358 (internal citations omitted).  Plaintiff asserts

a separate claim for negligence against Gissell that substantially overlaps with his unrecognized negligence per se claim.[10]  *Compare* Am. Compl. ¶¶ 115–22 *with id.* ¶¶ 123–32.  The Court should dismiss Plaintiff's negligence per se claim for the foregoing reasons, and, for the reasons set forth below, his negligence claim, as well.

> 4.  <u>Plaintiff Fails to Allege that Gissell Owes Him Any Duty With Respect to the Data, That He Suffered a Legally Cognizable Injury, or Causation</u>

Plaintiff's negligence claim should be dismissed for at least three reasons: *first*, Plaintiff fails to allege that Gissell owes him any specific duty; *second*, Plaintiff fails to allege that he suffered a legally cognizable injury; and *third*, Plaintiff fails to allege causation.

To state a claim for negligence under Massachusetts law, a party must allege: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) proof that the breach was the actual and proximate cause of the plaintiff's injuries; and (4) actual damage or injury.  *Heinrich v. Sweet,* 308 F.3d 48, 62–63 (1st Cir. 2002) (citing *Jorgensen v. Massachusetts Port Auth.,* 905 F.2d 515, 522 (1st Cir. 1990)); *Davis v. Prot. One Alarm Monitoring, Inc.*, 456 F. Supp. 2d 243, 249 (D. Mass. 2006).  Where a defendant does not owe a duty of care to the plaintiff, there is no actionable negligence.  *See, e.g.*, *Doe ex rel. Pike v. Pike*, 424 F. Supp. 3d 170, 180 (D. Mass. 2019).

Plaintiff fails to allege any facts showing that Gissell owed *him* a duty of care.  Plaintiff does not allege that he is a customer of CBCMA whose personal information Gissell allegedly failed to safeguard, nor that he is an employee or shareholder of CBCMA.  His conclusory

---

[10] Plaintiff's negligence per se and negligence claims both include allegations that Gissell misrepresented her competence as a compliance officer and that Plaintiff relied on those representations.  *See* Am. Compl. ¶¶ 117–18, 124–26.  It is unclear why Plaintiff included such allegations here, given that the allegations do not relate to a negligence per se or negligence claim.  *See supra* Arg. E.3.  Even if these allegations were more appropriately considered in support of Plaintiff's misrepresentation claim, they would not be actionable because expressions of "competence" are opinion and, thus, not subject to a misrepresentation claim under Massachusetts law.  *See 50 Candlewood Road LLC v. Lester Bldg. Sys.*, No. CIV. A. 99-775D, 2001 WL 303065, at *3 (Mass. Super. Ct. Mar. 21, 2001); *see also infra* at 22–24.

allegation that Gissell owed him "a duty of care with regard to the Data" is patently insufficient. Am. Compl. ¶ 123.

Plaintiff also fails to allege any legally cognizable injury resulting from Gissell's alleged breach of duty.  Plaintiff alleges that Gissell "fail[ed] to provide robust information security for customer financial information, [and therefore] violated the Federal Trade Commission's Safeguards Rule, 12 CFR Part 314 [sic], as well as FHA privacy policies" and "caused CBCMA" to do the same, "expos[ing] CBCMA's customers and CBCMA to financial loss."  Am. Compl. ¶ 73.   He asserts vaguely that he was "*required* to take action and to spend money to protect himself and the Data, which time, effort, and money would not have been necessary but for Gissell's negligence," without stating any basis for this "requirement."   Am. Compl. ¶ 131 (emphasis added).   Nothing in the Gramm-Leach-Bliley Act or the regulations and rules promulgated therefrom impose a duty that Gissell owes to Plaintiff.  *See* 16 C.F.R. § 314.4(b). Even if those rules impose upon Gissell a duty of care with respect to the disclosure of personal customer information, that duty is owed to the customers.  Plaintiff does not plead that he is within a class of persons that the rules were enacted to protect.  Notwithstanding Plaintiff's failure to plead any basis for the "requirement" that he undertake certain steps, he, incredibly, claims that he is owed $5 million for his alleged troubles.  *See* Am. Compl. ¶ 132.

Finally, Plaintiff does not allege Gissell's alleged failure to safeguard the Data was the actual or proximate cause of his alleged injury.  Plaintiff does not allege how or why Gissell's alleged conduct—leaving her computer and documents where they had been, in her home and office, after filing the Divorce Petition—forced Plaintiff to spend any time or money to rifle through Gissell's hard copy and electronic documents.  Were actual or proximate causation

interpreted that broadly, it is difficult to imagine the breadth of actions that family members and roommates could conceivably bring.

For all of these reasons, Plaintiff's claim for negligence must be dismissed.

5. Plaintiff's Amended Complaint Fails to Allege Misrepresentation with Sufficient Particularity and, in Any Event, Is Not Actionable

Plaintiff's misrepresentation claim should be dismissed for at least two reasons: *first*, the Amended Complaint fails to plead his claim for misrepresentation with sufficient particularity pursuant to Federal Rule of Civil Procedure 9(b); and *second*, the alleged misrepresentation is a statement of opinion and, thus, is not actionable.

To survive a motion to dismiss under Massachusetts law, "a plaintiff claiming fraudulent misrepresentation must allege that the defendant 1) made a false representation of material fact, 2) with knowledge of its falsity, 3) for the purpose of inducing the plaintiff to act thereon, and 4) that the plaintiff relied upon the statement to his or her detriment."[11]  *Johnson v. Brown & Williamson Tobacco Corp.*, 122 F. Supp. 2d 194, 207 (D. Mass. 2000).

Fraudulent misrepresentation is a species of fraud, which must be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b).  *See Alt. Sys. Concepts, Inc.*, 374 F.3d at 29.  The First Circuit interprets Rule 9(b) to require that the Amended Complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *See Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1st Cir. 1997) (internal citation and quotation marks omitted);

---

[11] While the Amended Complaint does not specify, it is apparent from the language Plaintiff employs that his misrepresentation claim is for intentional misrepresentation.  *See* Am. Compl. ¶¶ 117, 124–25, 134–35 (alleging that Gissell "represented to [Plaintiff] that she was a competent compliance officer" and that those "representations were a *lie*") (emphasis added).  But the arguments advanced herein still apply equally to intentional and negligent misrepresentation.  *See, e.g.*, *Logan Equip. Corp. v. Simon Aerials, Inc.*, 736 F. Supp. 1188, 1199 (D. Mass. 1990) (confirming that "[c]ertain rules of law are common to" intentional and negligent misrepresentation claims: in both cases, the alleged misrepresentation "must be identified with specificity to survive a motion to dismiss").

*see also Alt. Sys. Concepts, Inc.*, 374 F.3d at 29 (noting law is well established that pleader "is expected to specify the who, what, where, and when of the allegedly false or fraudulent representation").

In contravention of Rule 9(b)'s requirements, Plaintiff "did not provide any details as to . . . where the[] [alleged misrepresentations] were made, when they occurred, and what actions they engendered." *See Alt. Sys. Concepts, Inc.*, 374 F.3d at 29–30. Plaintiff merely alleges that "Gissell almost daily represented to [Plaintiff] that she was a competent compliance officer," Am. Compl. ¶ 134; *see also id.* ¶¶ 117, 124. The Amended Complaint is bereft of any particulars, such as when the representations were made[12] or where they were made. Nor does Plaintiff allege how he relied on the alleged misstatements.

Likewise, Plaintiff has not alleged facts concerning *how* he allegedly relied on the alleged misstatements, nor that his alleged reliance was *reasonable*. "[A] claim for misrepresentation requires a showing of reliance on the part of the plaintiff." *David v. Dawson, Inc.*, 15 F. Supp. 2d 64, 137 (D. Mass. 1998). Plaintiff "cannot prevail . . . unless [he] can prove that [his] reliance on the allegedly false statements was *reasonable*." *Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236, 241–42 (D. Mass. 1999) (citing *Saxon Theatre Corp. v. Sage*, 347 Mass. 662, 200 N.E.2d 241, 244–45 (1964)). Plaintiff merely alleges vaguely that he "relied on these representations," but does not allege any action taken in *reliance on* Gissell's alleged claim that "she was a competent compliance officer," let alone that such reliance was reasonable. Am. Compl. *Id.* ¶¶ 118, 126, 134, 136.

Plaintiff's misrepresentation claim also should be dismissed because the alleged misrepresentation is a non-actionable statement of opinion, not a statement of fact. Whether the

---

[12] Although Plaintiff alleges that Gissell made the alleged misrepresentation "almost daily," Am. Compl. ¶¶ 117, 124, 134, he does not specify during what time period they were allegedly made.

alleged misrepresentation is a statement of fact or a statement of opinion is a "threshold determination for any misrepresentation claim." *Cummings v. HPG Intern., Inc.*, 244 F.3d 16, 21 (1st Cir. 2001).  "[A] representation is one of opinion 'if it expresses only (a) the belief of the maker, without certainty, as to the existence of fact; or (b) his judgment as to the quality, value, authenticity, or other matters of judgment." *Id.*  Massachusetts courts hold that representations as to one's "degree of . . . *competence* . . . [are] not a matter susceptible of actual knowledge" and, thus, "are not actionable statements for the purpose of fraud, deceit, and negligent misrepresentation." *50 Candlewood Road LLC v. Lester Bldg. Sys.*, No. CIV. A. 99-775D, 2001 WL 303065, at *3 (Mass. Super. Ct. Mar. 21, 2001) (emphasis added).

Because Plaintiff's "misrepresentation claim [is] wholly conclusory and lacking any semblance of specific detail," (*see Alt. Sys. Concepts, Inc.*, 374 F.3d at 30) and because Plaintiff's misrepresentation claim is premised on non-actionable representations of competence it must therefore be dismissed.

### 6.   Plaintiff's Amended Complaint Fails to State a Claim of *Quantum Meruit*

Plaintiff's *quantum meruit* claim should be dismissed because he fails to allege that he reasonably expected to be compensated, or that Gissell accepted a benefit with knowledge of his expectation.

Under Massachusetts law, to recover upon the theory of *quantum meruit*, "the claimant must prove (1) that it conferred a measurable benefit upon the defendants;  (2) that the claimant reasonably expected compensation from the defendants; and (3) that the defendants accepted the benefit with the knowledge, actual or chargeable, of the claimant's reasonable expectation." *See Finard & Co., LLC v. Sitt Asset Mgmt.*, 79 Mass. App. Ct. 226, 229–30, 945 N.E.2d 404, 407–08 (2011).

Plaintiff alleges that he "did not volunteer," but was "compelled by Gissell's and Ferguson's irresponsible conduct," to "to search computers, thumb drives, boxes, buildings, and furniture for Data" to "make sure that all the Data is safe guarded [sic]."  Am. Compl. ¶¶ 142, 144. Even after "be[ing] subjected to the[] threats" of "senior officers and their lawyers of CBCMA," Plaintiff admits that he *continues* to seek "the advice of experts [on] how to handle the Data and to investigate the Customer Information breaches," which he includes in his absurd claim that he is owed $500,000 from each defendant for his efforts.[13]  *Id.* ¶¶ 143, 145, 149.

Plaintiff fails to allege facts that satisfy the second and third prongs of his *quantum meruit* claim.  While Plaintiff claims that "Gissell and Ferguson sought all this effort" from him and that his "effort has redounded to the benefit of Gissell and Ferguson," *id.* ¶¶ 147–48, he does not allege that that he reasonably expected compensation for those efforts.  Nor does Plaintiff allege that Gissell accepted the benefit with knowledge of Plaintiff's expectation for $500,000 from each defendant.  Thus, Plaintiff's allegations fall far short of successfully pleading a *quantum meruit* claim and should be dismissed.

---

[13] In other words, Plaintiff—who is neither an employee nor a customer of CBCMA—chose to search his soon-to-be ex-wife's business office, computer and documents for an unspecified reason, now claims that his own breach of those documents requires his expenditure of time and money to safeguard them, and expects to be paid $500,000 for doing so.  The Court should not countenance Plaintiff's brazen attempt to recover alleged expenses for his own illicit misadventure.

## CONCLUSION

WHEREFORE, for the reasons stated herein, Defendant Miki L. Gissell respectfully requests that the Court dismiss the Amended Complaint.

Dated: December 21, 2020

Respectfully submitted,
MIKI L. GISSELL,

By her attorney,

/s/ *Timothy D. Swain*
Timothy D. Swain, BBO#704722
Megan K. Sullivan, BBO#705919
MANNING GROSS + MASSENBURG LLP
125 High Street, 6th Floor
Oliver Street Tower
Boston, MA 02110-3536
Telephone: (617) 670-8800
Facsimile: (617) 670-8801
tswain@mgmlaw.com;
msullivan@mgmlaw.com;

26

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1(a)(2)

I, Timothy D. Swain, hereby certify that the parties have previously conferred with respect to the relief requested in this motion and have attempted in good faith to resolve or narrow the issues, but have been unable to do so.

*/s/ Timothy D. Swain*
Timothy D. Swain

## CERTIFICATE OF SERVICE

I, Timothy D. Swain, hereby certify that on this 21st day of December, I caused a true and accurate copy of the foregoing document to be served on all counsel and parties of record by operation of the Court's Electronic Case Filing System ("ECF").  Additionally, a .pdf copy has been sent via email to all parties not receiving electronic notices through ECF, per the parties' agreement.

*/s/ Timothy D. Swain*
Timothy D. Swain