UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DIRK S. ADAMS,
 Plaintiff,

v.

MIKI L. GISSELL, and
RICHARD FERGUSON,
 Defendants.

CIVIL ACTION NO. 20-11366-PBS

REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR DISCOVERY (#176).

Familiarity with the previous rulings in this case is presumed. Plaintiff Dirk S. Adams has been sanctioned for abusive litigation conduct. *See* #170 (Order adopting #144, Report and Recommendation). The award of attorneys' fees and costs to defendant Miki L. Gissell, whose efforts to obtain a temporary restraining order against and to divorce Adams preceded this lawsuit, among numerous others, and to defendant Richard Ferguson, Gissell's boss, has yet to be calculated. Adams' response to defendants' petition for attorneys' fees and costs, *see* #177, is not due until November 9, 2022, *see* #174.

Presently before the court[1] is Adams' motion for discovery of:

1. Retainer agreements between defendants and defense counsel and defendants and Cedar Band Corporation (CBC) or defendants' employer, CBC Mortgage Agency (CBCMA);

2. Documents evidencing defense counsel's compliance with Massachusetts Rule of Professional Conduct 1.8(f), governing compensation by a third party;

3. Invoices sent by defense counsel to the defendants and CBC or CBCMA;

4. Indemnification agreements between defendants and CBC or CBCMA;

---

[1] Judge Saris has referred the motion to this court. (#181.) Because plaintiff is essentially seeking posttrial relief, the court is entering a report and recommendation rather than a memorandum and order. *See* #144 at 1 n.1 (and authorities collected).

      5. Any and all written communications between defense counsel and defendants and between defense counsel, defendants, and CBC or CBCMA about alleged conflicts of interest between defendants;

      6. Any and all written communications between defense counsel and defendants and between defense counsel, defendants, and CBC or CBCMA about the use of different law firms to represent defendants; and,

      7. Payments and payment documents from CBC or CBCMA.

(#176 at 1-2.)

      Adams claims that he is "entitled to know" whether he will ultimately be reimbursing Gissell and Ferguson or CBC/CBCMA;[2] that he is "entitled to know" whether Gissell or her attorneys waived the attorney-client privilege by submitting invoices to CBC/CBCMA; and, that he is "entitled to know" whether Gissell, Ferguson, and their respective attorneys discussed conflicts of interest or the purportedly "excessive" use of different law firms. (#176 at 3.)

      Defendants respond that Adams' request for invoices sent by defense counsel to them is moot, since redacted invoices have been produced. (#180 at 2. n.2.) Otherwise, they oppose Adams' motion. For the reasons set forth below, the court recommends that his motion be **ALLOWED** in part and **DENIED** in part.

      There is authority to support disclosure of information related to the fees that parties to whom fees will be awarded agreed to pay their attorneys and under what circumstances when cases proceed to the stage at which courts must calculate reasonable awards, as this case has.[3] Adams

---

[2] Counsel for Gissell attests that CBCMA has paid Gissell's legal bills in this action and that it is counsel's understanding that Gissell will be required to return to CBCMA any fees and costs she is awarded. (#179 at ¶14.) Counsel for Ferguson attests that CBCMA has paid Ferguson's legal bills in this action and that Ferguson will be required to return to CBCMA any fees and costs he is awarded. (#178 at ¶9.)

[3] Defendants invoke the "lodestar" method, *see* #180 at 2-3; *see also* #177 at 13, and courts have applied that method in calculating awards of reasonable attorneys' fees and costs upon sanctioning parties for abusive litigation conduct pursuant to their inherent authority. *See*, *e.g.*, *Farmer v.*

does not cite that authority, but defendants do, *see* #180 at 4.[4] Under *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and progeny, courts may consider "whether the fee is fixed or contingent" in deciding whether an adjustment of the lodestar amount is warranted. *Id.* at 430 n.3 (citation omitted); *see also Gavin v. City of Boston*, #18-cv-10819-LTS, 2022 WL 847409, at *9 (D. Mass. Mar. 22, 2022) (quoting *Diaz v. Jiten Hotel Mgmt., Inc.*, 741 F.3d 170, 177 n. 7 (1st Cir. 2013) (citing *Hensley*, 461 U.S. at 430 n.3)); *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 337 & n.3 (1st Cir. 1997) (citations omitted).

The First Circuit has expressly stated that an agreed-upon rate may be indicative of the prevailing rates in the community. *United States. v. One Star Class Sloop Sailboat*, 546 F.3d 26, 41 (1st Cir. 2008) ("Although a prevailing party's fees are not necessarily limited by a preexisting agreement between lawyer and client, such an agreement is some evidence of the prevailing market rate for the lawyer's services. . . . And when, as in this case, the rate agreed to between the

---

*Banco Popular of N.A.*, 791 F.3d 1246, 1259 (10th Cir. 2015); *Parallel Iron LLC v. NetApp, Inc.*, 84 F. Supp. 3d 352, 357-358 (D. Del. 2015); *but see Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1206-1207 (10th Cir. 2008) (finding no abuse of discretion in trial court's rejection of lodestar method in favor of actual-fee method under 28 U.S.C. § 1927). The lodestar method demands the following:

> First, the court must calculate the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are excessive, redundant, or otherwise unnecessary. . . .  Second, the court must identify a reasonable hourly rate or rates -- a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence. . . . Multiplying the results of the first two steps yields the lodestar amount. . . . The court may then elect to adjust the lodestar amount, either upward or downward, if the specific circumstances of the case warrant such an adjustment.

*Pérez-Sosa v. Garland*, 22 F.4th 312, 321 (1st Cir. 2022) (citations and quotation marks omitted).

[4] The party seeking discovery bears an initial burden of showing the possibility of relevance; the burden then shifts to the objecting party to show that discovery is improper. *See Fernandes v. Bouley*, #20-cv-11612-GAO, 2022 WL 2915702, at *9 (D. Mass. July 25, 2022) (and cases cited).

3

prevailing party and his attorney is within the universe of reasonable rates, a district court does not abuse its discretion by taking the agreed rate into account in its fee-determination calculus. . .") (citations, including to *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989), omitted); *see Blanchard*, 489 U.S. at 93 ("The presence of a pre-existing fee agreement may aid in determining reasonableness").

While the court understands that any agreed-upon rate or the existence of some contingency-based arrangement is not dispositive, *see Blanchard*, 489 U.S. at 93-95; *see also One Star Class*, 546 F.3d at 41, in light of these binding precedents, it cannot agree with defendants' contention that retainer agreements "are irrelevant." (#180 at 4.) The court thus recommends allowing Adams' request for production (No. 1, in part) of retainer agreements between Gissell, Ferguson, and their respective attorneys, but only to the extent that those agreements include information related to the agreed-upon fees and the circumstances under which those fees would be paid to counsel for defendants.[5]

The court recommends that Adams' remaining requests for production be denied. A petition for attorneys' fees "should not result in a second major litigation." *Hensley,* 461 U.S. at 437. "Control of discovery is entrusted to the sound discretion of the trial courts, and the denial of a motion to compel discovery will not be disturbed absent abuse of discretion." *Martinez v. Schock Transfer and Warehouse Co., Inc.*, 789 F.2d 848, 850 (10th Cir. 1986) (finding no abuse of

---

[5] Defendants do not squarely argue that retainer agreements are protected by the attorney-client privilege, an issue on which they would bear the burden. *See Vicor Corp. v. Vigilant Ins. Co.*, 674 F.3d 1, 17 (1st Cir. 2012); *see also Jean-Pierre v. J&L Cable TV Srvcs., Inc.*, #18-cv-11499-MLW, 2021 WL 6773087, *2-3 (D. Mass. June 28, 2021) (identifying portions of retainer and fee agreements that generally are not protected by attorney-client privilege, and portions that may be; "'[as] a general principle, information regarding a client's fees is not protected by the attorney-client privilege because the payment of. . .fees is not a confidential communication between the attorney and the client'") (quoting *Matter of Grand Jury Proceeding, Cherney*, 898 F.2d 565, 567 (7th Cir. 1990)).

discretion in trial court's denial of motions to compel discovery related to petition for attorneys' fees).

With respect to his requests for production of retainer agreements between defendants and CBC/CBCMA (No. 1, in part); indemnification agreements (No. 4); invoices sent by defense counsel to CBC/CBCMA (No. 3); and payments or payment documents from CBC/CBCMA (No. 7), Adams has not shown relevance and the court agrees with defendants that discovery of such information is improper. *See Schafler v. Fairway Park Condominium Ass'n*, 147 Fed. Appx. 113, 115 (11th Cir. 2005) (per curiam) (unpublished) (lodestar method "does not require a district court to consider insurance coverage or the existence of indemnification agreements;" ". . .the reduction of an attorneys' fee award against a plaintiff because of the defendant's insurance coverage would undermine the purpose of an award of attorneys' fees, which is to discourage baseless appeals"); *see Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Continental Illinois Corp.*, 116 F.R.D. 252, 257 (N.D. Ill. 1987) (indemnification and insurance agreements "are not relevant when considering the imposition and amount of [Fed. R. Civ. P.] 11 sanctions"); *Molinaro v. Hart Electronics Corp. of Scanton*, #72-cv-250, 1982 WL 63777, at *1 (M.D. Pa. Sept. 27, 1982) (". . . the fact that Regency Electronics, Inc., the manufacturer of the accused devices, has paid the attorneys' fees of Hart, its retailer, under an indemnification agreement is not relevant to the issue of whether plaintiffs should be required to reimburse Hart's counsel fees").[6]

The court likewise declines to recommend production of documents evidencing defense counsel's compliance with Massachusetts Rule of Professional Conduct 1.8(f) (No. 2); any and all

---

[6] Adams asserts that he is "entitled to know" who he will be reimbursing ultimately. *See* #176 at 3. Assuming for the sake of argument that is so, Adams "know[s]" who, from defense counsel's affidavits. *See* #179 at ¶14; #178 at ¶9.

written communications between counsel and defendants and between counsel, defendants, and CBC/CBCMA about alleged conflicts of interest (No. 5); and any and all written communications between counsel and defendants and between counsel, defendants, and CBC/CBCMA about the use of different law firms (No. 6). As defendants argue, *see* #180 at 7, Adams can review defense counsel's affidavits and the redacted invoices, *see* #178; #179, and argue in his response to defendants' petition for attorneys' fees and costs that, for instance, the use of different law firms was excessive or that particular efforts were duplicative. Allowing his factually and legally unsupported requests for production would "result in a second major litigation," *see Hensley,* 461 U.S. at 437, which is unwarranted here. Adams has already been sanctioned for abusive litigation conduct.[7]

Review by District Judge.

The parties are advised that any party who objects to this report and recommendation must file written objections with the Clerk of this Court within fourteen days of service of this report and recommendation. The written objections must specifically identify the portion of this report and recommendation to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *U.S. v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983);

---

[7] In light of this recommendation, the court does not have to reach defendants' argument that much of the information Adams seeks through request Nos. 2, 5, and 6 is protected by the attorney-client privilege. *See* #180 at 6-8.

*U.S. v. Vega*, 678 F.2d 376, 378–79 (1st Cir. 1982); *Park Manor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

|  |  |
|---|---|
| October 26, 2022 | <u>/s/ M. Page Kelley</u><br>M. Page Kelley<br>Chief United States Magistrate Judge |